**PERSONALLY SERVED**

STATE OF MINNESOTA

COUNTY OF HENNEPIN

FILED
MINNEAPOLIS, MINN

13 MAY 28 AM 10: 47

CITY CLERK
DEPARTMENT

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

_____

Elliot Raynell Barnes,

Plaintiff,

v.

Officer Richard Walker, individually and in his
professional capacity as a Minneapolis Police
Officer, and the City of Minneapolis,

Defendants

_____

Case Type: Personal Injury

Court File No. _____

**SUMMONS**

THIS SUMMONS IS DIRECTED TO THE CITY OF MINNEAPOLIS

    1.    YOU ARE BEING SUED. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

    2.    YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS. You must give or mail to the person who signed this summons a written response called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

        Kuhlman Law, PLLC
        333 Washington Ave. N., Suite 335
        Minneapolis, MN 55401

    3.    YOU MUST RESPOND TO EACH CLAIM. The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or

disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS. If you do not answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. LEGAL ASSISTANCE. You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.

6. ALTERNATIVE DISPUTE RESOLUTION. The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: May 24, 2013                    **KUHLMAN LAW, PLLC**

Chris Kuhlman

Christopher J. Kuhlman, Atty. No. 0386840
333 Washington Ave. N., Suite 335
Minneapolis, Minnesota 55401
ph. 612.349.2747
fax 612.435.9835
ATTORNEY FOR PLAINTIFF

STATE OF MINNESOTA                      COUNTY OF HENNEPIN

DISTRICT COURT                          FOURTH JUDICIAL DISTRICT

Elliot Raynell Barnes,

                                        Case No:

          Plaintiff,

v.                                      **COMPLAINT**
                                        **(JURY TRIAL DEMANDED)**

Officer Richard Walker, individually
and in his professional capacity as a
Minneapolis Police Officer, and the
City of Minneapolis

          Defendants.

---

Plaintiff Elliot Barnes through his attorney Christopher J. Kuhlman, Union Plaza, 333 Washington Avenue North, Suite 335, Minneapolis, Minnesota 55401, alleges the following for his causes of action against the Defendants:

## PRELIMINARY STATEMENT

1.     This is a civil rights action for money damages for injuries sustained by Plaintiff, Mr. Elliot Barnes, as a result of the excessive use of force and violation of his constitutional and common law rights by Defendant, Officer Richard Walker, who was on duty as a Police Officer at the time of the incident. Plaintiff brings this action under 42 U.S.C. § 1983, as Minnesota common law.

Shortly after midnight on April 3, 2012, Defendant Walker and four other on-duty police officers entered Barnes' home. When Barnes asked why the five officers were in the home, Defendant Officer Walker ordered him to sit down and stop asking questions. After Barnes sat down, with his hands up, palms facing outward, Defendant Walker attacked him. Specifically, Defendant Walker pummeled Barnes's head and face with his fists, then pinned him to the ground and shouted "stop resisting." Barnes, however, was not resisting.

## PARTIES

2.     Plaintiff Barnes is an African-American citizen of the United States and was at all times relevant to this action, a resident of Hennepin County, Minnesota.

3.     Upon information and belief, Defendant Officer Richard Walker was, at all times relevant herein, duly appointed and acting as a police officer with the Minneapolis Police Department which is within Hennepin County. Defendant Officer Walker has previously been the subject of another alleged excessive force case in 2010 (See Ex. 1).

4.     Upon information and belief, Defendant City of Minneapolis ("City") is a municipal corporation within Hennepin County, Minnesota and at all times relevant to this matter employed Defendant Officer Walker.

## JURISDICTION & VENUE

5.    Barnes brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments of the United States Constitution, and 28 U.S.C. §§ 1331 and 1343(3) and Minnesota common laws of Battery and Assault..

6.    Venue is proper in Hennepin County because the events or omissions giving rise to Barnes' claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

7.    On or around midnight of April 3, 2012, Barnes and another African-American friend, Mr. Terranzi Applewhite, were walking home from the bus stop when several white males threatened them and said they were unwelcome in the neighborhood. Shaken, Barnes and Applewhite ignored the treats and kept walking to Barnes' home in the 5200 block of Irving Ave. N.

8.    Barnes has no criminal record and, at the time, was employed as a Private Security Guard. Upon information and belief, Applewhite also has no criminal record and is Youth Minister for Bethel Community Christian Center.

9.    Two of Mr. Barnes' housemates, Lisa Lee and Alex Grey, were present at that house when Barnes and Applewhite arrived home.

10.    At approximately 12:16 AM, Defendant Officer Walker, together with Lieutenant Medaria Arradondo and Officer William Gregory, arrived at the home.

11.    The officers entered the home with the consent of another housemate and demanded that all its occupants come downstairs.

12. As instructed, Barnes headed downstairs to the living room, as did Mr. Grey and Applewhite.

13. Barnes observed the five officers in his home with their guns drawn.

14. The officers patted down Barnes and told him to take his hands from his pockets.

15. Barnes complied and then asked what was happening.

16. Defendant Officer Walker told him, "You'll find out when the other officers are done."

17. Still concerned, Barnes asked again why the officers were searching the house with their guns drawn and why they had frisked him. He said he had a right to know why the police were in his house.

18. Defendant Officer Walker shouted at him to "shut up and sit down."

19. Barnes complied with Defendant Officer Walker's demand. He proceeded to the couch and sat down with his hands raised, palms facing outward showing that he was not a threat.

20. Without provocation, Defendant then pointed at Barnes and said, "You know what! …" and charged towards him.

21. Defendant grabbed Barnes' hands, which were still raised, palms facing out and pinned them down.

22. Defendant then punched Barnes in his face and head approximately seven times.

23.     Barnes took no defensive action, other than to turn his head in an attempt to protect his face.

24.     Defendant then threw Barnes to the floor, pinned him down, and placed his knee in Barnes' back and shouted "Stop resisting!" three times.

25.     Barnes was not resisting.

26.     Barnes said he could not breathe and that he wasn't resisting.

27.     Another officer held Barnes down as Defendant pulled his arms up and cuffed him.

28.     Grey and Applewhite observed Defendant's unprovoked and senseless attack on Barnes.

29.     Upset and shocked by Defendant Officer Walker's unprovoked use of excessive force, Barnes contacted the Civilian Review Board the very next day to report Walker's conduct.

30.     Grey contacted City Council Member Barbara Jones and the Minneapolis Police Department 4th Precinct to report Walker's inappropriate conduct.

31.     Barnes was later charged with a Gross Misdemeanor Criminal Charge of Obstruct Legal Process-Interfere with Peace Officer.

32.     This Gross Misdemeanor Charge carried a maximum sentence of up to one year in jail.

33.     Barnes refused to accept any plea offer from the Prosecutor and took his case to trial.

34.     Barnes was acquitted at trial.

35.     As a result of Defendant Officer Walker's conduct, Barnes sustained injuries to his head, which caused him to miss time at his Security Guard job.

36.     As a result of Defendant Officer Walker's use of excessive force, Barnes has suffered from an assortment of symptoms, including: blackouts, headaches, shaking, anxiety, difficulty sleeping, nail-biting, muscle tension, resumption of smoking, and lowered self-confidence, as well as feelings of hopelessness, embarrassment, paranoia, helplessness, confusion, fear, and nervousness.

37.     As a result of Defendant's use of excessive force, Barnes avoids other people has faced increased pressure from bill collectors and his relationships with his social friends and others have suffered.

38.     As a result of Defendant Walker's use of excessive force Barnes is very anxious upon seeing police or other law enforcement officers.

39.     Barnes did not experience any of the above symptoms and injuries before Defendant Walker attacked him.

## COUNT I:

## VIOLATION OF 42 U.S.C. § 1983 – EXCESSIVE USE OF FORCE

40.     Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

41.     The conduct described above will establish that Defendant Officer Walker, in his individual capacity, violated Barnes' Fourth Amendment rights by using excessive force to affect his arrest.

42.     By the actions described above, Defendant Walker, under color of state law, violated and deprived Plaintiff of his clearly established and well-settled civil right to be free from the excessive use of force by a police officer.

43.     Defendant subjected Plaintiff to these deprivations of constitutional rights either maliciously, intentionally, deliberately, willfully, or by acting with reckless disregard for whether Plaintiff's civil rights would be violated by his actions.

44.     As a direct and proximate result of the acts of Defendant, Plaintiff has suffered physical injury and mental anguish, and is therefore damaged in an amount in excess of seventy-five thousand dollars ($75,000.00).

45.     Punitive damages are also properly awardable against Defendant and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the pleading requirements or the differing standard of proof set forth in Minn. Stat. § 549.20.

46.     Plaintiff is entitled to recovery of his costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II:

## BATTERY

47.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

48.    By charging at Plaintiff and beating him while he was compliant, Defendant Walker used more physical force than was reasonable and necessary under the circumstances.    Such unwanted contact and excessive force constitutes common law battery.

49.    As a direct and proximate result of Defendant Walker's battery, Plaintiff suffered physical injury, pain and suffering, mental anguish and humiliation in excess of fifty thousand dollars ($50,000.00).

50.    Defendant City of Minneapolis is jointly and severally liable for the actions of Officer Walker under the doctrines of agency and *respondent superior*.


## COUNT III:

## ASSAULT

51.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

52.    Defendant Walker, by his unwarranted charging of Plaintiff and beating of Plaintiff, caused Barnes to be in reasonable fear of imminent great bodily harm.    These actions and display of force by Defendant constitutes common law assault.

53.    As a direct and proximate result of Defendant's assault, Plaintiff suffered physical injury, pain and suffering, mental anguish and humiliation in excess of fifty thousand dollars ($50,000.00).

54.    Defendant City of Minneapolis is jointly and severally liable for the actions of Officer Walker under the doctrines of agency and *respondeat superior.*

## COUNT IV:

## VICARIOUS LIABILITY

55.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

56.    The City of Minneapolis is liable for Officer Walker's conduct because he was acting within the scope of his employment when he caused Plaintiff physical and emotional harm.

57.    Upon information and belief, Officer Walker's conduct occurred during working hours and while conducting official business.

58.    Defendant Officer Walker's illegal conduct during the course and scope of his employment is imputable to the City of Minneapolis as its agent under the vicarious liability doctrine.

## RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor as follows:

1.     That the practices of Defendant Officer Walker complained of herein be adjudged in violation of the rights secured by Barnes under the Fourth Amendment.

2.     That the practices of Defendant Officer Walker complained of herein be adjudged in violation of Minnesota common law.

3.     That the City of Minneapolis is vicariously liable for Defendant Officer Walker's conduct adjudged in violation of Minnesota common law.

4.     That a permanent injunction be issued prohibiting Defendant Officer Walker from engaging in unreasonable seizures in violation of the Fourth Amendment.

5.     That Plaintiff is awarded compensatory damages in an amount to be established at trial.

6.     That Plaintiff is awarded damages for mental anguish and pain and suffering in amount to be established at trial.

7.     That Plaintiff is awarded punitive damages against Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

8.     That the Court award Plaintiff his attorney's fees and costs and expenses of this action and prejudgment interest pursuant to 42 U.S.C. §§ 1983 and 1988 and Minnesota law.

9.     For such other and further relief as this Court deems just and equitable.

Respectfully submitted,

Dated:  May 24, 2013

_____
Christopher J. Kuhlman, #0386840

**KUHLMAN LAW, PLLC**
333 Washington Ave. N., Suite 335
Minneapolis, MN 55401
Phone: 612.349.2747
Fax: 612.435.9835
Email: ckuhlman@cklegal.com

ATTORNEY FOR PLAINTIFF

## **ACKNOWLEDGMENT**

The undersigned hereby acknowledges that sanctions may be awarded, pursuant to Minn. Stat. § 549.211, to the parties against whom the allegations in the pleadings are asserted.

May 24, 2013

_____
Christopher J. Kuhlman

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Derryl M. Jenkins,

        Plaintiff,

vs.

Richard Walker, George Warzinik,
Michael Honeycutt, John Trangsrud,
Shawn Powell, Christopher Tuma, and
Scott Dahlquist, all in their individual capacity
as officers of the Minneapolis Police
Department, and the City of Minneapolis,

        Defendants.

Case No.

COMPLAINT

JURY TRIAL DEMANDED
UNDER FRCP 38(b)

---

For his Complaint, plaintiff Derryl M. Jenkins ("Jenkins") hereby states and alleges as follows:

1.     This is an action for money damages for injuries sustained by Jenkins as a result of the use of excessive force in violation of his constitutional rights by the individual defendants. Plaintiff Jenkins also asserts a claim against the City of Minneapolis pursuant to *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978).

2.     Jenkins brings this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth Amendment of the United States Constitution, and 28 U.S.C. §§ 1331 and 1342(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter.

3.     The amount in controversy exceeds $75,000, excluding interest and costs.

4.     Jenkins is, and was at all times material herein, a citizen of the United States and a resident of the State of Minnesota.

**EXHIBIT: 1**

5.      Defendant Richard Walker ("Walker"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

6.      Defendant George Warzinik ("Warzinik"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

7.      Defendant Michael Honeycutt ("Honeycutt"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

8.      Defendant John Trangsrud ("Trangsrud"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

9.      Defendant Shawn Powell ("Powell"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

10.     Defendant Christopher Tuma ("Tuma"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

11.     Defendant Scott Dahlquist ("Dahlquist"), upon information and belief, was, at all times material herein, a citizen of the United States and a resident of the State of Minnesota, duly appointed and acting as an officer of the 4th Precinct of the Minneapolis Police Department.

12.     Defendant City of Minneapolis is a municipality duly incorporated under the laws of the State of Minnesota.

2

**EXHIBIT: 1**

13.    In the early morning hours of February 19, 2009, Jenkins was driving from his residence to a friend's house to retrieve some music equipment he had left there and to listen to some music.

14.    Shortly after 3:00 a.m. on February 19, 2009, Walker began following Jenkins's vehicle, which was allegedly going 45 mph in a 30 mph zone. This is disputed by Jenkins and Jenkins was never charged with speeding.

15.    Walker initiated a traffic stop of Jenkins, and Jenkins promptly pulled his car over. Jenkins felt something about the stop was wrong and called his girlfriend on his cell phone as soon as he was pulled over. Jenkins's call captured audio from this incident on his girlfriend's voice mail.

16.    Walker exited his squad car and approached Jenkins's vehicle. Walker attempted to open Jenkins's driver's-side door, but the door was locked.

17.    Walker then knocked on Jenkins's window, prompting Jenkins to crack open his car door, at which point Walker pulled the door open and asked for Jenkins's license.

18.    Jenkins asked what he did wrong and asked to speak to Walker's supervisor.

19.    Walker continued to ask for Jenkins's license and repeatedly motioned with his hand.

20.    Jenkins believed Walker's hand motions meant Walker wanted Jenkins to exit the vehicle and he indicated that he had to get his license from his pocket. Jenkins's license was in a cargo pocket close to Jenkins's knee and was difficult to reach while he was sitting down in the vehicle.

21.    Walker then reached into Jenkins's car and grabbed Jenkins's cell phone from him and threw it on top of Jenkins's car.

22.    Unsure how best to follow Walker's directions, Jenkins then got out of his vehicle. Walker told him to stay in the car and Jenkins responded, "Hold on sir . . ." Walker then grabbed Jenkins, pulled his sweater up over his head, and wrestled him to the ground.

3

**EXHIBIT: 1**

23. Upon information and belief, prior to Walker grabbing Jenkins and pulling his sweater over his head, Jenkins had made no physically aggressive move toward Walker whatsoever.

24. While grappling with Jenkins, Walker called for help on his radio, stating that he was "fighting one."

25. After Walker had Jenkins on the ground and under control, Walker struck Jenkins in the face with his closed right fist.

26. While Walker was wrestling with and holding Jenkins on the ground, Jenkins repeatedly asked, "What did I do wrong?"

27. Walker held Jenkins on the ground until additional officers arrived.

28. While Walker had Jenkins under control and was holding him down, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist arrived in short order.

29. Without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Tuma admitted in his supplemental report that he executed at least 3 punches to the right side of Jenkins's head. Tuma also admitted that he then used his taser on Jenkins, firing the probes into Jenkins for two cycles of the weapon and then using the taser in drive-stun mode for a third cycle.

30. Without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Powell admitted in his supplemental report that he ran up to Jenkins and kicked Jenkins in the torso 3 times. He then performed multiple closed fist strikes to Jenkins's head.

31. Without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Trangsrud admitted in his supplemental report that he kicked Jenkins in the lower back and then hit him several times in the back. Trangsrud then grabbed Jenkins's arm and helped handcuff him.

4

**EXHIBIT: 1**

32.     Without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Honeycutt admitted in his supplemental report that he grabbed Jenkins's arm and delivered several punches to Jenkins's shoulder.  Honeycutt had Jenkins's right arm at times during the handcuffing.

33.     Without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Warzinik admitted in his supplemental report that he kneeled on Jenkins's leg and delivered at least 5 blows to Jenkins's buttocks.  Warzinik also held one of Jenkins's arms and helped handcuff him.

34.     Upon information and belief, without witnessing Jenkins physically assault Walker and while other officers were restraining and/or striking Jenkins, Dahlquist participated in the beating and/or handcuffing of Jenkins.

35.     After a few minutes of defendant officers beating Jenkins, the officers handcuffed him.

36.     While the supplemental reports of the defendant officers identify numerous punches to Jenkins's head and upper body and numerous kicks, these reports do not identify the full number or severity of blows to Jenkins's head (including likely kicks to the head), which are evidenced by the squad videotape and the following photographs:

5

**EXHIBIT: 1**



37.     Jenkins was beaten so badly that he defecated on himself.

38.     Sgt. Christopher Pickhardt arrived on the scene during the incident and, once Jenkins was handcuffed, reviewed video footage of the events and filed a police report wrongly suggesting that the video footage shows Jenkins strike Walker in the mouth.

39.     Similarly, upon information and belief, Sgt. Steven Wagner investigated this case starting on 2/19/09 and filed a report stating, "it is clear that the officer suffered demonstrable bodily harm resulting from the assault by the defendant." Sgt. Wagner presented the case to the County attorney for charges.

40.     One of the officers on the scene called an ambulance for Jenkins, and he was transported via ambulance to North Memorial Hospital.

41.     At North Memorial, Jenkins complained of body pains and right thumb pain and was diagnosed with a "4cm laceration to the left eyebrow [and] orbital contusion."

42.     Jenkins received a CT scan to evaluate for facial fractures, which found no fractures but noted, "prominent left facial and preorbital soft tissue swelling/hematoma."

43.     Jenkins received seven interrupted 6-0 sutures in his eyebrow.

6

**EXHIBIT: 1**

44.     Just a few minutes after the beating, Dahlquist exchanged text messages with another Minneapolis Police Department officer describing the incident with Jenkins as "A GOOD FIGHT."

45.     The force defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist used on Jenkins was unauthorized, excessive, and constitutionally improper.

46.     Upon information and belief, the force defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist used on Jenkins was malicious and for the very purpose of causing pain and/or injury.

47.     Upon information and belief, all of the defendants as well Sgt. Pickhardt and Sgt. Wagner tried to cover up officer misconduct by filing false and misleading police reports in this matter.  The reports contain several materially false claims and statements regarding Jenkins's conduct, including that Jenkins struck Walker and continued resisting arrest even after the initial strikes to his head and body.  Walker, Pickhardt, and Wagner also tried to cover officer misconduct by seeking to falsely charge Jenkins with felony assault of a police officer and a DWI based on refusal to submit to chemical testing.

48.     Jenkins was charged with Assault in the Fourth Degree (felony) against Walker and with refusal to submit to chemical testing, Third Degree DWI.  Additionally, Jenkins had his driver's license revoked for refusing to submit to chemical testing.

49.     On March 30, 2009, the County Attorney dismissed all charges against Jenkins related to this incident, specifying that the dismissal was "[i]n the interests of justice."  Moreover, on June 29, 2009, the revocation of Jenkins's driver's license was rescinded.

50.     Jenkins never physically threatened any of the defendants in any manner when he was physically assaulted by Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist.

51.     The severity of any potential crime at issue was minor, as Jenkins was pulled over for speeding or, at worst, suspected, but unproven, DWI.

7

**EXHIBIT: 1**

52.     Jenkins did not pose an immediate threat to the safety of the defendant officers or others at the time of his beating and arrest.

53.     Jenkins did not attempt to evade arrest by flight and did not actively resist arrest.

54.     Finally, the defendant officers were armed while Jenkins had no weapon.

55.     Following the incident, Jenkins received additional medical attention at North Memorial to have his sutures taken out.

56.     Jenkins also sought medical attention for his right thumb at Tria Orthopaedic, where he was diagnosed with "post-traumatic appearing osteoarthritis" in his right thumb and "subluxation [parital dislocation] of the joint and subacute ulnar collateral ligament partial tear."

57.     Since the assault occurred on February 19, 2009, Jenkins has incurred special damages, including medical expenses that exceed $6,000 to date, as a direct and proximate result of the excessive use of force and violation of his constitutional rights by the defendants.

58.     Plaintiff suffered and will continue to suffer mental and emotional injuries from the vicious attack.  He has received professional treatment for those injuries.  Notably, he has a complete distrust of the police and their wrongful motivations, whether racial or otherwise.  His diagnoses related to this injury are Acute Stress Disorder with panic symptoms and aggravation of pre-existing mental disorders, including Post Traumatic Stress Disorder.

59.     Upon information and belief, and as demonstrated by the use of force manifesto issued by 4th Precinct Lt. Mike Sauro discussing the subject incident, 4th Precinct supervisors approved of and encouraged the level of force used against Jenkins, specifically strikes to the head. See Exhibit A.  Despite medical and police training evidence to the contrary, in his manifesto, Lt. Sauro flatly rejected the notion that head strikes could constitute deadly force.  See id.

60.     Upon information and belief, the City of Minneapolis has failed to date to take any disciplinary action against any of the defendant officers as a result of their conduct in this incident.

8

**EXHIBIT: 1**

61.     Upon information and belief, only after the video of Plaintiff's beating became public (and caused considerable public outrage) did the City of Minneapolis launch an investigation into officer conduct in this incident.

62.     Due to the fact that the City of Minneapolis has historically failed to discipline its police officers for use of excessive force, these officers do not feel constrained from using excessive force, knowing the department will not investigate their actions adequately nor impose negative sanctions on them.

63.     The effect of the department's failure to discipline has led other Minneapolis police officers to believe they could (as the defendant officers did) get away with using excessive force.

64.     Plaintiff demands a jury trial as to all issues of fact herein.

## COUNT ONE
### 42 U.S.C. § 1983 – FOURTH AMENDMENT VIOLATIONS BY DEFENDANTS WALKER, TUMA, POWELL, TRANGSRUD, HONEYCUTT, WARZINIK, AND DAHLQUIST

65.     Plaintiff realleges the allegations contained in paragraphs 1-64 herein against defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist.

66.     By the actions described above, defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist, under color of state law, violated and deprived Jenkins of his clearly established and well-settled civil rights to be free from the use of excessive force.

67.     Defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist subjected plaintiff to this deprivation of rights either maliciously or acting with reckless disregard for whether Plaintiff's rights would be violated by these actions.

68.     As a direct and proximate result of the acts and omissions of defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist, Jenkins suffered severe injuries, was forced to endure significant pain and mental suffering, and was thereby damaged in an amount yet

9

**EXHIBIT: 1**

to be determined, but believed to be well in excess of Two-Hundred Fifty Thousand ($250,000) Dollars.

69.     Punitive damages are available against defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), and, as such, are not subject to the differing pleading standard set forth in Minn. Stat. § 549.20.

70.     Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

COUNT TWO<br>CIVIL RIGHTS VIOLATION BY DEFENDANT CITY OF MINNEAPOLIS

71.     Plaintiff realleges the allegations contained in paragraphs 1-70 herein against defendant City of Minneapolis.

72.     Defendant City of Minneapolis intentionally, knowingly, recklessly, or with deliberate indifference to the rights of citizens, failed to supervise, instruct, and train, including through proper discipline, defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist to refrain from using unreasonable force.

73.     Defendant City of Minneapolis, through the 4th Precinct supervisors, including Lt. Mike Sauro, approved and encouraged officers to use head strikes in situations that did not call for deadly force.

74.     Before February 19, 2009, defendant City of Minneapolis, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel, including defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist, of using excessive force, which is evidenced by Sgt. Pickhardt's and Sgt. Wagner's false police reports.

10

**EXHIBIT: 1**

75.     As of February 19, 2009, defendant City of Minneapolis maintained a custom and practice of deliberate indifference to use of excessive force by its officers.

76.     Defendant City of Minneapolis, directly or indirectly, under color of state law, approved or ratified the unlawful, malicious, reckless, or wanton conduct of defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist.

77.     As a direct and proximate result of the acts and omissions, systematic flaws, policies and customs of defendant City of Minneapolis, Jenkins suffered injuries, was forced to endure unnecessary pain and mental suffering, and was thereby damaged in an amount yet to be determined by a jury, but believed to be well in excess of Two-Hundred Fifty Thousand ($250,000) Dollars.

78.     Plaintiff is entitled to recovery of his costs, including reasonable attorney fees, under 42 U.S.C. § 1988.

WHEREFORE, plaintiff Derryl M. Jenkins prays for judgment against the defendants as follows:

1.     As to Count One, a money judgment against defendants Walker, Tuma, Powell, Trangsrud, Honeycutt, Warzinik, and Dahlquist for compensatory damages in an amount in excess of Two Hundred-Fifty Thousand ($250,000) Dollars and punitive damages in an amount to be determined by the jury, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest;

2.     As to Count two, a money judgment against defendant City of Minneapolis for compensatory damages in an amount in excess of Two Hundred-Fifty Thousand ($250,000) Dollars, together with costs, including reasonable attorney fees, under 42 U.S.C. § 1988 and prejudgment interest;

**EXHIBIT: 1**

3.   For an order mandating additional training for Minneapolis police officers to counteract previous instruction and for remediation on use of force, including but not limited to reversing the effects of Lt. Mike Sauro's use of force manifesto;

4.   For an order mandating additional training for Minneapolis Police Department investigators regarding excessive force and standards for charging victims/suspects; and

5.   For such other and further relief as this Court deems just and equitable.

FLYNN, GASKINS & BENNETT, L.L.P.

Dated: _January 28, 2010_

Robert Bennett , #6713
Ryan O. Vettleson, #312915
333 South Seventh Street, #2900
Minneapolis, MN  55402
Telephone: 612-333-9500

and

Paul J. Edlund
212 Third Avenue North, #545
Minneapolis, MN 55401
Telephone: 612-338-2829

Attorneys for Plaintiff

12

**EXHIBIT: 1**